*The Bay Circuit—In Chancery.*

## THE TITTABAWASSEE BOOM COMPANY

### vs.

## ANDREW CUNNING.

*Obstruction of Navigation—Rights of Boom Companies—Riparian Rights
—State Powers Over Water Ways.*

The Saginaw River is one of those great highways of navigation and
commerce upon which the trade and commerce are carried on
between the several States.

While the State cannot confer the power to entirely obstruct the naviga-
tion of this river, it may authorize the construction of bridges
which, to some extent interfere with the commerce between the
States, suitable arrangements being provided for the safe passage of
vessels through them.

---

Rafting logs is not engaging in commerce between the States, though incidentally connected with it.

A dock line established under the authority of the State must be presumed to be a reasonable one. But if it interferes only with commerce within the State, the State courts cannot interfere with it.

By the Court, GREEN J.: The bill in this case was filed to restrain the defendant from extending his dock, situate on the east side of the Saginaw river a little above Twenty-third street bridge, out into said river so as to obstruct the free navigation thereof with rafts, etc.

The bill sets forth facts indicating the extent and importance of the plaintiff's business of booming and delivering of logs to owners and mills, and the neces-

sity of an unobstructed and free navigation of the river at the point in question for the passing of their rafts down the river to mills below the said bridge, etc.

It states that prior to 1882 defendant had driven piles out in front of said dock extending 75 feet into the river, and that since January, 1882, he had driven piles out in front of said dock 92 feet beyond the outer line thereof, thus preventing the free navigation of the stream by the complainant, and that he threatens to continue the same 11 feet further out, so that his entire dock would extend over 170 feet from the shore and more than 20 feet beyond the east end of the east span of the bridge.

---

was greatly injured, and the bones thereof were fractured below the knee. That thereupon, and on or about said 14th day of September aforesaid, at Bay county aforesaid, the said plaintiff retained and employed the defendant as such physician and surgeon, to attend the said plaintiff, and to treat and endeavor to set and cure the said leg of said plaintiff, for a reasonable reward to be therefor paid by said plaintiff to said defendant.

That the said defendant then and there accepted and entered upon such employment, and agreed to reduce said fracture and to set and cure the said leg of said plaintiff.

That thereupon it became and was the duty of said defendant to treat and endeavor to set and cure the plaintiff's said leg, and reduce said fracture in an ordinary, skillful and diligent manner, yet the said defendant not regarding his said duty, nor his said employment, but contriving and intending to injure and aggrieve the said plaintiff, so conducted himself in an ignorant, unskillful and negligent manner in that behalf in that he did not nor would use the ordinary and proper means and remedies, and did not nor would use any means or remedies to reduce said fracture, and to set and cure said leg of said plaintiff, whereby the said fracture became set, and the wound occasioned thereby

That these rafts are made up of five strings and are about 80 feet wide and in towing down they require a space of greater width on account of the winds, currents, etc. At the time the bill was filed no dock line had been established by the common council at the place in question, but after the filing of the original answer of the defendant, such a line was established and this fact is set up in a supplemented answer. That line is some 4 or 4½ feet further out into the stream than the dock spiles have been driven, and the defendant now claims the right to extend his dock to that line but no further. Will the dock so extended constitute such an obstruction to the navigation of the river as to be a nuisance which this court can restrain or abolish ?

The Saginaw river is undoubtedly entitled to be classed as one of those great highways of navigation

became sore and festered, and the bones of the said plaintiff's left leg diseased and he, the said plaintiff, lost flesh and strength, and by reason of such default and neglect of said defendant, in order to save plaintiff's life, it became and was necessary thereafter, to wit, on or about January 15th, 1879, at Bay county aforesaid, to amputate and cut off the said leg of said plaintiff, whereby the said plaintiff suffered and underwent severe pain, and became and was permanently injured and disabled, and was hindered and prevented from performing and transacting his ordinary affairs and business by him to be performed and transacted for a long space of time, to wit, thence hitherto, to the great loss and damage of said plaintiff, to wit: Ten thousand dollars, and was also by reason thereof compelled to pay large sums of money in endeavoring to be cured of said fracture, and said amputation, so occasioned by said defendant's default and neglect, to wit: One thousand dollars, and said plaintiff hath been and still is, by reason of the premises, otherwise greatly injured and damnified, to wit, at Bay county aforesaid, to plaintiff's damage, twenty thousand dollars, and therefore he brings suit, &c.

SIMONSON & GILLETT,<br>Plaintiff's Attorneys.

and commerce upon which trade and commerce are carried on between the several states. The government has expended money in improving its capacity for navigation, both at its mouth and several miles above where the dock in question is situated. During the season of navigation vessels of large and small size are constantly passing up and down carrying passengers and freight in both directions and many of the larger vessels transport lumber, salt, etc., from the Saginaws and Bay City to other states and bring to them from other states coal, stone, and often freights and merchandise. It is not shown that the defendant's dock in any way obstructs or impedes the navigation of the river for such purposes. The only obstruction or impediment to navigation complained of or shown by the testimony is the inconvenience to which the dock in question subjects the plaintiff in passing its rafts down below the Twenty-third street bridge, and this inconvenience results mainly from the width of the rafts, as they are usually made up, and it is concluded that if such rafts were made 4 strings in width instead of 5, there would be sufficient room for their passage without any slight inconvenience on account of the dock. But the plaintiff claims that, in order to deliver to the mills below the bridge, the quantities of logs which their business requires, and at a reasonable cost, it is necessary that these rafts shall be made up as wide as they are accustomed to make them, and that they cannot, without great damage to the largest manufacturing interests of the valley, reduce their width, and that so made up the plaintiff is subjected to delay and additional expense in getting its rafts by this dock and through the

bridge. This difficulty results from the fact that in approaching the span of the bridge through which the raft passes the tug must be detached and pass through between the swing piers before it can be taken around, and again attached. The raft is liable to double up between McLean's and defendant's docks and between defendant's dock and the bridge, and this is especially so in case of an unfavorable wind. It does not seem probable that if the bridge were not there, or if the tug could pass through it without being detached from the raft, there would be any essential difficulty on account of the dock, or if there was a continuous line of dockage from McLean's dock to the defendant's or what has now been fixed as the dock line under the authority of the legislature, or if a boom was placed there and so constructed that rafts might slide along its outer edge there would not seem to be any reasonable ground to complain, and in view of the fact that before the defendant's dock was extended rafts were liable to be, and sometimes were driven upon the old dock and doubled into the slip on the north side of it, there seems to be reason to believe there would be less difficulty in passing that point than before the extension.

The space through which the rafts pass under the bridge between the shore pier and the east swing pier is 134 feet, according to the diagram exhibited, and the defendant's dock is about 250 feet above the bridge, and but for the other difficulties in passing the bridge above referred to, there would be ample room for the plaintiff's rafts. If docks were constructed continuously upon the line established by the common council down to or near the bridge, the space still left for rafts to

pass would be 91 feet, or 11 feet wider than the rafts, and in that case would probably be sufficient for that purpose.

As to the effect of establishing a dock line in front of the defendant's premises it is objected that this being a river of the character above intimated, the state has no power to authorize its obstruction by docks which obstruct navigation. It may be conceded that the state can confer no power to entirely obstruct its navigation, but it can authorize the construction of bridges, which, to some extent, interfere with even that which constitutes commerce between the states, suitable arrangements being provided for the safe passage of vessels through them. But there are considerations which may distinguish the business of the complainant from that of the general commerce of the river. The rafts are made up once for all and may be made of any length or width that will fit the condition of the navigation. They are brought to the mills along the stream, broken up, and the timber manufactured into lumber. Their navigation is no part of the trade or commerce between the states, though it may be said to be connected with it, and so is the floatage of logs down the small streams, over which the state has exclusive control.

A dock line having been established under the authority of the state, it must, I think, be presumed to be a reasonable one, and if not, as it effects only this species of navigation which is confined exclusively to the river within the state, I am not prepared to say that this court can interfere with it. The establishing of

this line, beyond which owners are not allowed to extend their docks, by implication allows them to build them out to that line.

When this bill was filed no dock line had been established, and the defendant, apparently supposing a dock line had been fixed some 11 feet further out into the stream than the spiles had been driven, was proceeding and intended to extend his dock out to that point, and he so stated to the complainant's agents or employees This would have been unlawful and injurious to the complainant, and a temporary injunction was properly allowed. Since, however, the establishment of such line it appears the defendant had no intention of going beyond it and he cannot do so without violating an express provision of the statute.

The bill must therefore be dismissed, but as there was ground for filing it no costs will be awarded to the defendant.

(January 4, 1883.)

*Durand & Emerick* for Complainant.
*John Moore* of Counsel.
*T. A. E. Weadock* for Defendant.